Jacob Konjoian  
vs.  
Red Top Cab Company
of Rhode Island
} Law No. 76027.

October 23, 1929.

HAHN, J. This is an action on the case for damages for personal injuries alleged to have been caused by the negligence of the defendant, and is heard on defendant's motion for a new trial on the usual grounds after verdict for the plaintiff for the sum of $7000.

The plaintiff, while crossing Westminster street in Providence about 10:00 p. m. on August 27, 1927, was struck by a taxicab of the defendant and thrown to the street. He was picked up unconscious and taken to the Rhode Island Hospital, suffering from injuries to his head. As to these facts there is no dispute, but there is a dispute as to the manner in which plaintiff was struck and as to the reasonableness of the amount of the verdict.

Plaintiff testified that both he and a companion with him saw the cab coming and both felt they had time to cross the street safely. The driver of the cab also stated that he saw the two men about 100 feet ahead of him, crossing the street diagonally from the northerly to the southerly side. If these were the actual circumstances, no accident would hardly be anticipated, and there seems to be but little doubt that the men passed safely in front of the cab and that plaintiff was struck by the rear fender. Whether he attempted to retrace his steps and walked into the machine or the machine skidded sideways and struck him was a matter of fact for the jury's decision, and the decision seems sustained by the evidence.

The accident may be termed an indirect one; the plaintiff says he saw the cab and the driver states he saw the plaintiff, each in ample time to avoid a direct hit. The plaintiff crossed safely in front of the cab and the cab would undoubtedly have passed the plaintiff safely in the usual course of events. Plaintiff was crossing the street temporarily, to get a drink of water at a drinking fountain on the southerly side of Westminster street at the Citizens Savings Bank. He lived in Johnston and intended to take a trolley car home and to do so would have to return to the northerly side of Westminster street to await a car proceeding in a westerly direction, or toward Johnston. After the accident he was found lying in the street in the space midway between the two trolley tracks. No reason was shown why he should suddenly turn back and forego the water he was after.

As to the taxicab, the evidence shows that it was brought to a sudden stop and when stopped, was at a considerable angle to its original course and pointing toward the northerly side of Westminster street. The driver stated that he did not apply his brakes in anticipation of or to avoid a possible accident, but only after feeling the rear part of the cab strike something. It does not seem quite probable, however, that the cab, proceeding in a direct line, would more than have brushed plaintiff or given him a glancing blow, from which no shock sufficiently great would have been transmitted to the driver to cause him to make the sudden stop he did. It seems probable that the driver may not have seen the plaintiff until very near him and then the imminence of an accident led to the sudden application of the brakes, causing the cab to skid and strike the plaintiff more than a glancing blow, leaving him and the cab in the positions in which they were found.

The fact that the street and car rails were still wet from a rain that fell some hours earlier would seem to confirm the probability of the cab skidding under a sudden application of the brakes, especially if it was on or very near to the rails, as it may have been

at the time judging from its position when stopped and the other circumstances.

The jury was instructed that if plaintiff turned around and walked into the side of the cab there could be no recovery. In this respect the probabilities of the case, as well as plaintiff's own testimony, were to the effect that he did not turn, and on the other hand the witness Hoxsie said that he turned and walked towards the cab. This conflict of evidence was one of the questions presented to the jury for its consideration. The case presented a clear question of fact as to negligence and there is ample evidence to sustain the jury's decision on this question.

The amount of the verdict seems very substantial, however, and somewhat in excess of the plaintiff's actual damage. His bill for a doctor and hospital expenses are all together only about $200, and his claim for loss of business and physical damage and suffering shows evidence of exaggeration. His business, which he states he had to sell, appears to have been run to a great extent by his son, who is now conducting it for the alleged purchaser, who in turn appears never to have been engaged in such a business before.

While it is impossible to state specific items, other than doctor's bills and hospital expenses, wherein the damages seem excessive, the Court feels that on the whole the sum of $5000 will amply compensate the plaintiff for his damage, and that such amount is more conscionable and just than the amount of the verdict.

If plaintiff, within ten days from the filing of this rescript, shall remit all of the verdict in excess of $5000, a new trial is denied, otherwise it is granted.

For plaintiff: Howard B. Gorham, Sayles Gorham.

For defendant: Patrick T. Curran. S. S. Bromson.